UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

S.S. AIR, INC., and AILEEN NOBLES,

Plaintiffs,

v.  608CV077

CITY OF VIDALIA, *by and through its Mayor and Council,*

Defendant.

## ORDER

### I. BACKGROUND

This lawsuit follows a state court claim brought by defendant City of Vidalia ("the City") against plaintiffs S.S. Air, Inc., and Aileen Nobles ("Plaintiffs"). Plaintiffs have now filed suit in this Court claiming that they suffered a violation of their constitutional rights under the Fifth and Fourteenth Amendments entitling them to relief pursuant to 42 U.S.C. § 1983. Doc. # 1.

Plaintiffs owned an aircraft hangar situated on land owned by the City at the Vidalia Municipal Airport. *Id.* at 2. In August 2003, the City, as part of an airport improvement project, initiated condemnation proceedings against the hangar in Toombs County Superior Court, asserting that acquisition of the hangar was necessary for the "public good and welfare." *Id.*, exh. A at 1-2.

Over a year later, however, the City dismissed the condemnation petition without prejudice, *id.*, exh. B, after filing a "Petition for Writ of Possession and Injunctive Relief" (hereinafter, "the dispossessory petition" and "the dispossessory proceedings") in the Toombs County Superior Court. *Id.*, exh. C. In the dispossessory petition, the City sought to have the hangar removed from the land, alleging that it owned the land upon which Plaintiffs' hangar was situated, and that neither of the Plaintiffs "ha[d] any lease agreement with [the City] nor permission of [the City] to maintain the hangar on [the City's] property," nor were either of the Plaintiffs paying rent to the City for use of the land. *Id.*, exh. C at 2. The City requested that the court "enter a writ of possession order requiring [Plaintiffs] to remove the [hangar]," and that the court enter an injunction requiring the Plaintiffs to remove the building "within a reasonable time as set by the court." *Id.* at 3.

Following a hearing, the superior court entered an order allowing the City to remove the hangar from its property at Plaintiffs' expense. *See S.S. Air, Inc. v. City of Vidalia*, 278 Ga. App. 149, 149-50 (2006) (recounting superior court proceedings). The court determined that a landlord-tenant relationship had existed between the City and Plaintiffs and that, as a result, the City was entitled to remove the hangar from its property at Plaintiffs' expense. *Id.* at 150.

Plaintiffs appealed to the Supreme Court of Georgia. *Id.* The case was transferred to the Court of Appeals of Georgia, which affirmed (in a published opinion) the superior court's determinations. *Id.* In its opinion, the Court of Appeals emphasized that, under Georgia law, "a landlord-tenant relationship may exist even where the purported tenant is not required to pay rent," and that the evidence in this case supported the conclusion that "a landlord-tenant relationship existed between the City and [Plaintiffs]." *Id.* at 151. The court then explained that, under Georgia law, "as a landlord, the City had the right to seek possession of its land from its tenants," and that, pursuant to O.C.G.A. § 44-7-12, when a tenant's term has ended "any trade fixtures remaining will be regarded as abandoned for the use of the landlord and will become the landlord's property." *Id.* The court then affirmed that the hangar was a trade fixture, which Plaintiffs, "as tenants at will, were obligated to remove [at their own

expense] ... when the lease term ended at the request of the City." *Id.* at 151-52.

Several months later, after the Georgia Supreme Court refused to grant certiorari, the City sent a letter to the Plaintiffs stating its position that "arguably, under both [the superior court's] ruling and the Court of Appeals decision, the hangar has already been abandoned and is now the property of the City." Doc. # 1, exh. D. Nevertheless, the City "want[ed] to give [Plaintiffs] an opportunity to remove the structure," and allowed them a month and a half (from 11/1/06, when the letter was written, until 12/14/06) to do so. *Id.* Otherwise, the City warned, Plaintiffs would be "deemed to have abandoned all interest in the structure." *Id.*

Despite the trial and appellate courts' clear determinations that: (a) the City and Plaintiffs were in a landlord-tenant relationship; (b) the tenancy was at-will; (c) the hangar upon the property was a trade fixture; (d) the City, as landlord, effectively terminated the tenancy; and (e) therefore, upon the termination of the tenancy, the hangar, as a trade fixture, had to be removed from the property at Plaintiffs' expense, or it would be "regarded as abandoned for the use of the landlord and [would have] become the landlord's property," 278 Ga. App. at 150-52 (quoting O.C.G.A. § 44-7-12), Plaintiffs failed to remove the structure from the City's land.

On 9/17/08, Plaintiffs filed their "Complaint for Damages for Violation of Constitutional Rights," initiating the current case. Doc. # 1. They allege a "violation, under color of state law, of [their] constitutional rights under the Fifth and Fourteenth Amendment." *Id.* at 1. Plaintiffs, however, provide sparse details as to what particular action by the City they believe violated their rights. They state that "as a result of the dispossessory proceedings, [P]laintiffs were required to either abandon the hangar building or remove it from defendant's property," and they acknowledge that the City "advised [them] to vacate or remove the hangar building by December 14, 2006." *Id.* Plaintiffs then state that

> since December 14, 2006 the City of Vidalia has been in sole possession of the hangar building owned by [P]laintiffs and has had sole use of said building. ... [and] has denied [P]laintiffs unrestricted access to and use of the hangar building. The actions of the City of Vidalia have deprived [P]laintiffs of the use, possession, and enjoyment of the hangar building ... [and] have resulted in the loss to [P]laintiffs of the value of the hangar building. Defendant City of Vidalia has acquired [P]laintiffs' interest in said hangar building[,] ... is now using the hangar building as its own property[,]... [and] has not paid to Plaintiffs any compensation with regard to [its] acquisition of the Plaintiffs' interest in said hangar building.

*Id.* at 3-4. As a result, Plaintiffs assert, they are "entitled to recover just and adequate compensation from the City of Vidalia for the fair market value of the hangar building," which they contend to be "no less than $70,000." *Id.* at 4.

The City brought the instant motion to dismiss Plaintiffs' claims pursuant to F.R.Civ.P 12(c), arguing that "Plaintiffs have no property interest in the hangar to which due process rights attach" because "under Georgia law the hangar is a 'trade fixture,' which Plaintiffs abandoned to Defendant when they failed to remove it following dispossessory proceedings." Doc. # 18.

The Court finds that Plaintiffs' claims are barred by the *Rooker-Feldman* doctrine, and that the Court is without jurisdiction to consider the claim. Moreover, even if jurisdiction did exist, the Complaint must be dismissed, as it fails to state an actionable claim.

## II. STANDARD OF REVIEW

Pursuant to Rule 12(c), "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." F.R.Civ.P. 12(c). "Judgment on the pleadings under Rule 12(c) is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." *Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir. 2002) (citing *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998)). Additionally, the Court may take into consideration any documents that are referenced in or attached to the complaint, so long as those documents are central to the plaintiff's claim. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368 (11th Cir. 1997). The Court must accept the facts in the complaint as true and view them in the light most favorable to the nonmoving party. *Cannon v. City of West Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001); *Ortega v. Christian*, 85 F.3d 1521, 1524 (11th Cir.1996). "If upon reviewing the pleadings it is clear that the plaintiff would not be entitled to relief under any set of facts that could be proved consistent with the allegations, the court should dismiss the complaint." *Horsley*, 292 F.3d at 700 (citing *White v. Lemacks*, 183 F.3d 1253, 1255 (11th Cir. 1999)). As with a motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561-64 (2007) (citations omitted).

## III. THE *ROOKER-FELDMAN* DOCTRINE BARS PLAINTIFFS' CLAIMS

### A. Applicable Law

Generally speaking, under the *Rooker-Feldman* doctrine, "lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments." *Lance v. Dennis*, 546 U.S. 459, 463 (2006) (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983)). In its more recent *Rooker-Feldman* decisions, the Supreme Court clarified that the doctrine should only be applied to a narrow category of cases. *See Lance*, 546 U.S. at 464; *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Pursuant to *Lance* and *Exxon Mobil*, the Eleventh Circuit has strictly adhered to the rule that the doctrine narrowly applies only to "'cases [(1)] brought by state-court losers [(2)] complaining of injuries caused by state-court judgments [(3)] rendered before the district court proceedings commenced and [(4)] inviting district court review and rejection of those judgments.'"[1] *Nicholson v. Shafe*, 558 F.3d 1266, 1274 (11th Cir. 2009) (quoting *Exxon Mobil Corp.*, 544 U.S. at 284).

Here, the Plaintiffs were losers in the relevant state court proceedings and those proceedings concluded before the filing of this suit. *See generally S.S. Air., Inc.*, 278 Ga. App. 149. The issue that remains is whether Plaintiffs claim an injury by reason of the state court judgment and are therefore asking the Court to set the judgment aside, in which case this Court is without subject matter jurisdiction to hear the claim, or whether they are presenting a claim independent of the state court judgment.

### B. Analysis

Plaintiffs' complaint is sparse on details, but it basically asserts that the City violated

---

[1] The Court acknowledges that, in *Nicholson*, the Eleventh Circuit "decline[d] to break down *Exxon Mobil*'s holding into factors or requirements" and instead "appl[ied] the language as is." 558 F.3d at 1274 n.8. This Court has quoted *Exxon Mobil*'s language exactly as it appeared *Nicholson*, and inserted numbers (in brackets) at the start of each new phrase in the holding simply for the sake of organization and clarity.

3

Plaintiffs' Fifth and Fourteenth Amendment rights by taking possession of the hangar without compensating them. To hold in Plaintiffs' favor would require this Court to review and overturn the state court judgment that gave the City the authority to take possession of the hangar. Thus, the *Rooker-Feldman* doctrine dictates that this Court is without jurisdiction to address the claim.

First, as the state court judgment was the cause of Plaintiffs' alleged injury, the first of the two remaining *Rooker-Feldman* requirements has been satisfied. The Second Circuit has offered the following example to demonstrate how such causation may be satisfied:

> Suppose a state court, based purely on state law, terminates a father's parental rights and orders the state to take custody of his son. If the father sues in federal court for the return of his son on grounds that the state judgment violates his federal substantive due-process rights as a parent, he is complaining of an injury caused by the state judgment and seeking its reversal. This he may not do, regardless of whether he raised any constitutional claims in state court, because only the Supreme Court may hear appeals from state-court judgments.

*Hoblock v. Albany Co. Board of Elections*, 422 F.3d 77, 87 (2d Cir. 2005). The *Hoblock* court explained that "a federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are *produced by* a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." *Id.* at 88 (emphasis added). In the *Hoblock* example, a judgment as to parental rights produced the alleged constitutional violation. Here, the state court's ruling on the Plaintiffs' property rights in the hangar produced the alleged constitutional violation (*i.e.*, the City's "taking").[2]

Had the Plaintiffs alleged that the City committed some misfeasance prior to or during the state court proceedings, or in the way it executed the state court's judgment, Plaintiffs' claim would likely survive, as they would have alleged an injury committed by the City without the "pre-approval" of the court. *See, e.g., Brody v. Village of Port Chester*, 2007 WL 704002, at *5 (S.D.N.Y. 3/7/07) ("Brody's due process claim, at heart, complains of the alleged lack of notice provided to him by the Village when the Village initiated condemnation proceedings against him. Although the Village's condemnation was ratified by the state courts ..., the Village, as the initiator of the notice, is the initiator of Brody's injury, not the state court judgment."); *see also DLX, Inc. v. Kentucky*, 381 F.3d 511, 517 (6th Cir. 2004) (*Rooker-Feldman* doctrine not applicable where "the injury alleged was the permit denial that predated the state-court proceedings, not the state-court decision itself"); *Kammeraad v. Michigan Dept. Envr. Quality*, 2006 WL 2598403, at *3 (W.D. Mich. 9/8/06) (where plaintiff alleges agency violated constitutional rights by denying application, plaintiff does not complain of injury rendered by state court decision upholding agency decision).

---

[2] Although the court of appeals did not explicitly hold that the hangar, as a trade fixture, had been abandoned, viewing the court's holding – "[Plaintiffs], as tenants at will, *were obligated* to remove the hangar when the lease term *ended* at the request of the City," *S.S. Air, Inc.*, 278 Ga. App. at 151 (emphasis added) – in conjunction with its explanation of the statutory effect of a tenant's failure to remove trade fixtures – "After the term and [the tenant's] possession are ended, any trade fixtures remaining will be regarded as abandoned for the use of the landlord and will become the landlord's property," *id.* (emphasis added) – requires the conclusion that Plaintiffs' failure to remove the hangar when the tenancy ended constituted abandonment of it to the City.

4

Likewise, had Plaintiffs alleged that any or all of the statutes relied upon by the state courts were unconstitutional, the claim likely would survive, as they would be requesting review of the statute, nor of the state court's interpretation and application of it. *See Feldman*, 460 U.S. at 482-83 (explaining that, although the district court did not have jurisdiction to review the District of Columbia court's application of a D.C. bar admission rule, the district court did have jurisdiction over the plaintiff's challenge of the constitutionality of the rule itself); *Hood v. Keller*, 341 F.3d 593, 597 (6th Cir. 2003) (*Rooker-Feldman* "does not prohibit federal district courts from exercising jurisdiction where the plaintiff's claim is merely 'a general challenge to the constitutionality of the state law applied in the state action,' rather than a challenge to the law's application in a particular case.").

Here, however, Plaintiffs have simply alleged that the City, by taking possession of the hangar without providing compensation, violated their constitutional rights. Implicit in Plaintiffs' takings claim is the assertion that they held property rights in the hangar at the time the City took possession – an issue that was conclusively resolved by the state court litigation. Thus, Plaintiffs necessarily, though implicitly, allege that the state court's application of otherwise valid statutes was incorrect, and they invite this Court to review and reject the state court judgment so that City can be held liable for taking the property. They have therefore invited this Court to review the state court's judgment as to the parties' property rights in the hangar, clearly satisfying the final *Rooker-Feldman* requirement.

Pursuant to the *Rooker-Feldman* doctrine, Plaintiffs' claim cannot be presented in this Court. Plaintiffs are clearly state court losers who are seeking review in this federal district court of their state court judgment. Therefore, this Court is without jurisdiction to consider their claim, and it must be dismissed.

## IV. PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Even if the *Rooker-Feldman* doctrine did not apply, Plaintiffs' complaint should be dismissed simply for its failure to state a claim. To say that Plaintiffs' complaint lacks detail is an understatement. Plaintiffs allege that their § 1983 claim arises "out of the violation, under color of state law, of plaintiffs' constitutional rights under the Fifth and Fourteenth Amendment[s]," and that they are entitled to "just and adequate compensation from the City of Vidalia for the fair market value of the hangar building," due to the defendant's failure to pay to Plaintiffs "any compensation with regard to the City's acquisition of the plaintiff's interest in said hangar building." Doc. # 1 at 1, 4. But, in their pleadings, Plaintiffs never identify how the City's taking possession of the building violated their due process rights, which is critical in light of the fact that they admit in their complaint that "as a result of the dispossessory proceedings, plaintiffs were *required to either abandon the hangar building or remove it* from defendant's property." Doc. # 1 at 3. They further admit that the City afforded them nearly a month and a half to remove the hangar, but they make no allegations excusing their failure to meet the deadline. In the absence of any allegations that Plaintiffs were somehow wrongfully prevented from removing the hangar, the only conclusion to be drawn from the face of the complaint is that Plaintiffs chose to abandon the hangar and are therefore not entitled to compensation.

## V. CONCLUSION

The Court therefore *GRANTS* the motion, doc. # 18, of defendant City of Vidalia to dismiss the Plaintiffs' claim against it.

5

Plaintiffs' motion for summary judgment is ***DENIED***. Doc. # 62. Plaintiffs' claim against the City of Vidalia is therefore ***DISMISSED WITHOUT PREJUDICE***. Doc. # 1.

This day of 15 July 2009.

*/s/ B. Avant Edenfield*
B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA